SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| In Re: | ) | Arizona Supreme Court |
| | ) | No.  CV-04-0153-CQ |
| JAMES M. SMITH, | ) | |
| | ) | United States |
| Debtor. | ) | Bankruptcy Court |
| _____ | ) | No.  B-95-06077-PHX-RTB |
| | ) | |
| SIDNEY LACHTER and SANDRA | ) | |
| LACHTER, Successors to Neepawa | ) | |
| Enterprises, Ltd., a Manitoba | ) | |
| corporation (registered to do | ) | |
| business in Arizona), | ) | |
| | ) | **O P I N I O N** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES M. SMITH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Certified Questions from the
United States Bankruptcy Court for the District of Arizona
The Honorable Redfield T. Baum, Judge

## QUESTIONS ANSWERED

| | |
|---|---|
| HIRSCH LAW OFFICE, P.C. | Scottsdale |
| by   Lawrence D. Hirsch | |
| and  Iva S. Hirsch | |
| Attorneys for Plaintiffs | |
| | |
| ELLETT LAW OFFICES, P.C. | Phoenix |
| by   Ronald J. Ellett | |
| and  Jay S. Volquardsen | |
| Attorneys for Defendant | |

**B E R C H**, Justice

¶1     This case asks us to resolve whether judgment creditors timely renewed a state-court judgment. The matter is before us on certified questions from the United States Bankruptcy Court for the District of Arizona.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2     In 1987, Sidney and Sandra Lachter secured a money judgment against the debtor, James Smith. They renewed the judgment, as permitted by Arizona law, on March 6, 1992, within the five-year period provided by statute for such renewals. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 12-1551, -1612(B) (1992). The debtor did not satisfy the debt and, in July of 1995, filed for bankruptcy protection, invoking the shield of the automatic stay of proceedings.

¶3     To protect their interests, the Lachters filed a complaint in the bankruptcy court alleging that Smith's debt to them was nondischargeable. *See* 11 U.S.C. § 523(a)(2) (1994). Because Smith had no assets, the bankruptcy court issued a general discharge on November 12, 1996, before any determination had been made regarding the dischargeability of Smith's debt to the Lachters. The initial determination that Smith's debt to

---

[1]    These facts are taken largely from the opinion of the Bankruptcy Appellate Panel in *In re Smith*, 293 B.R. 220 (B.A.P. 9th Cir. 2003) (*Smith II*). A more detailed exposition of the facts and procedural background can be found in that opinion.

the Lachters was nondischargeable was not made until October 24, 1997, and not finalized until much later.

¶4        On November 7, 1997, within thirty days of the bankruptcy court's determination of nondischargeability, the Lachters filed an affidavit of renewal of their judgment. They filed a "supplement" to the affidavit less than a month later, on December 5, 1997, after the bankruptcy court issued a signed minute entry memorializing its previously announced decision.[2] Following motions and an appeal by Smith, the Bankruptcy Appellate Panel ("BAP") eventually affirmed the bankruptcy court's determination of nondischargeability on December 9, 1999. *In re Smith*, 242 B.R. 694, 696 (B.A.P. 9th Cir. 1999).

¶5        In one of the earlier-filed motions for reconsideration, Smith had asserted that the Lachters' judgment had lapsed because they had failed to timely file their affidavit of renewal, as required by Arizona law. *See Smith II*, 293 B.R. at 222 n.4; *see also* A.R.S. §§ 12-1551, -1612. The Lachters then sought a determination from the bankruptcy court that they had timely renewed their judgment. The bankruptcy judge agreed with the Lachters, but his determination was reversed on appeal by the BAP. *Smith II*, 293 B.R. at 226. The

---

[2]    Absent a further renewal, the judgment would have lapsed in March, 1997. *See* A.R.S. § 12-1551. During the relevant renewal period, the bankruptcy court had not finally determined whether the debt was dischargeable.

BAP, citing *In re Spirtos*, 221 F.3d 1079 (9th Cir. 2000), and *In re Morton*, 866 F.2d 561 (2d Cir. 1989), agreed that 11 U.S.C. § 108(c) extended the time for renewing the judgment, but concluded that the bankruptcy court erred in relying on § 108(c)(2) in finding that the Lachters timely renewed their judgment. *Smith II*, 293 B.R. at 223-24. The BAP concluded instead that § 108(c)(1) applied. *Id.* at 225.

¶6       The BAP reasoned that § 108(c)(1) extended the time to renew the judgment by the number of days the automatic stay was in effect. *Id.* It concluded that the extension in this case was 487 days, encompassing the period from the filing of Smith's bankruptcy petition on July 13, 1995, until the date of discharge, November 12, 1996. *Id.* at 226. Under this analysis, the Lachters' judgment expired on July 6, 1998, 487 days after the original renewal deadline of March 6, 1997. *Id.* Because A.R.S. § 12-1612(E) calls for the renewal affidavit to be filed "within ninety days of expiration of five years from the date of the filing of a prior renewal affidavit," the BAP determined that the ninety-day period for filing the affidavit of renewal ran from April 6, 1998 to July 6, 1998. *Id.* at 227. Although the BAP stated that the renewal affidavit filed on November 7, 1997, immediately after the entry of the signed "nondischargeability" minute entry, was filed "much earlier" than this period, it stopped short of concluding that this

renewal affidavit was ineffective and remanded the case to the bankruptcy court to determine whether the Lachters' filing of their renewal affidavit might be deemed timely under § 108(c)(1). *Id.*

¶7      On April 30, 2004, United States Bankruptcy Court Judge Redfield T. Baum certified two questions of Arizona law to this court for resolution:

> A.   When a pending bankruptcy case is unresolved and the time period under Arizona law to file the required affidavit of renewal of judgment has passed, under what circumstances, if any, is the time period under A.R.S. [§] 12-1551 extended or otherwise changed to allow the judgment creditor to file a timely affidavit of renewal of judgment?
>
> B.   Were either of the affidavits of renewal of judgment filed by the Lachters timely filed?

¶8      We agreed to answer the certified questions. *See* A.R.S. § 12-1861 (2003) (permitting the Arizona Supreme Court, on certain conditions, to "answer questions of law certified to it by . . . a United States district court"). We have jurisdiction to decide certified questions pursuant to Article 6, Section 5(6) of the Arizona Constitution, A.R.S. §§ 12-1861 to 12-1867, and Arizona Supreme Court Rule 27.

## DISCUSSION

¶9      The first certified question asks whether under Arizona law the time for filing a renewal affidavit is extended if the debtor has a bankruptcy proceeding pending and an

automatic stay is in effect during the ninety-day renewal period of A.R.S. § 12-1551 or § 12-1612.  The answer under Arizona law is no.  A judgment creditor's inability to enforce a judgment during the initial or a subsequent statutory five-year period, whether because of bankruptcy stay or other reasons, does not extend the deadline imposed by A.R.S. §§ 12-1551 and 12-1612 to file a renewal affidavit.

¶10     Arizona law allows a judgment creditor to execute on a judgment within five years after entry of the judgment.  A.R.S. § 12-1551(A).  To execute after that time, the creditor must, within ninety days before the end of the five-year period, have filed an affidavit renewing the judgment pursuant to A.R.S. § 12-1612(B) or (E), or have brought an action on the judgment pursuant to A.R.S. § 12-1611.  The Arizona statutory scheme discusses two separate events:  enforcement of the judgment, and the ministerial filing of an affidavit to renew the judgment. The affidavit of renewal serves to notify interested parties of the existence and continued viability of the judgment.  *J.C. Penney v. Lane*, 197 Ariz. 113, 119, ¶ 29, 3 P.3d 1033, 1039 (App. 1999).

¶11     Under the bankruptcy laws, a petition for bankruptcy operates to stay any action to "create, perfect, or enforce" liens or judgments.  11 U.S.C. § 362(a) (1998).  Actions to collect from the debtor may be filed or reinstituted either "30

days after notice of the termination or expiration of the stay," 11 U.S.C. § 108(c)(2), or after a period set by "applicable nonbankruptcy law," as extended by "any suspension of such period" that results from the bankruptcy proceedings. 11 U.S.C. § 108(c)(1). The BAP determined that A.R.S. § 12-1551 is an "applicable nonbankruptcy law" setting the time for "commencing or continuing a civil action" that may be stayed by bankruptcy proceedings.[3] *Smith II*, 293 B.R. at 223 (citing § 108(c)).

¶12     That determination does no violence to Arizona law with respect to that portion of A.R.S. § 12-1551 that addresses bringing an action to enforce the judgment or seeking a writ of execution. Under Arizona law, *enforcement* is stayed and the time in which to enforce the judgment is tolled during the pendency of bankruptcy actions, just as it is while supersedeas bonds preclude enforcement and in other similar circumstances.

¶13     As a matter of Arizona law, however, the filing of an affidavit of renewal is simply a ministerial action intended in part to alert interested parties to the existence of the judgment. Such a ministerial filing serves a notice function and does not seek to enforce a judgment. *See J.C. Penney*, 197

---

[3]     We assume, by implication, that A.R.S. § 12-1612, which provides the mechanism for filing subsequent renewal affidavits, would also qualify as an "applicable nonbankruptcy law" that may be stayed by bankruptcy proceedings. *Cf. Smith II*, 293 B.R. at 223 (holding A.R.S. § 12-1551 to qualify); 11 U.S.C. § 108(c) (employing term "applicable nonbankruptcy law").

Ariz. at 119, ¶ 29, 3 P.3d at 1039. It therefore is not prohibited under Arizona law by an automatic bankruptcy stay or any stay of the enforcement of the judgment, such as might be imposed by the filing of a supersedeas bond.[4]

¶14     Thus, for example, under Arizona law, a creditor with a judgment entered on January 1, 2000, who was prevented by the existence of a supersedeas bond or bankruptcy stay from executing on the judgment until January 1, 2004, could nonetheless file a renewal affidavit within the ninety days preceding January 1, 2005. *See* A.R.S. § 12-1612(B). But even if an affidavit were not filed, the time in which to *enforce* the judgment would be tolled and extended through January 1, 2009, to accommodate the time the creditor was precluded by the bond or stay from attempting to collect on the judgment. *Accord Hazel v. Van Beek*, 954 P.2d 1301, 1310 (Wash. 1998) (summarizing position of several jurisdictions regarding suspensions, stays, and tolling of time limits).

¶15     We therefore answer the first certified question in the negative:  Under Arizona law, the time to file an affidavit

---

[4]     Several jurisdictions have similarly held that 11 U.S.C. § 362(a)(4) does not prevent the filing of a renewal affidavit. *See, e.g., Morton*, 866 F.2d at 564; *Barnett v. Lewis*, 170 Cal. App. 3d 1079, 1090, 217 Cal. Rptr. 80, 86 (1985); *O'Lane v. Spinney*, 874 P.2d 754, 756 (Nev. 1994) (citing with approval the holding in *Morton*); *Barber v. Emporium P'ship*, 800 P.2d 795, 797 (Utah 1990). The BAP declined to decide this question in this case. *Smith II*, 293 B.R. at 223.

of renewal of judgment is not changed or extended by the pendency of a bankruptcy case.

¶16    In addressing the second question, we start from the premise that the BAP has ruled as a matter of federal law that § 108(c)(1) extended the time for filing the renewal affidavit in this case. *Smith II,* 293 B.R. at 226. The BAP has also concluded as a matter of federal law that the effectiveness of a judgment is extended by the number of days that A.R.S. § 12-1551 would have been suspended by a stay preventing enforcement of the judgment. In this case, the BAP determined that period to be 487 days, the length of time the bankruptcy stay precluded enforcement of the judgment. *Id.*

¶17    The second certified question asks whether, under these circumstances, either of the affidavits of renewal that the Lachters filed was timely. Given the BAP's determination in this case that the renewal deadline was extended under § 108(c)(1) by 487 days, *see id.*, we conclude that the time for filing the renewal affidavit was also extended. As noted above, one purpose of the filing requirements of A.R.S. §§ 12-1551 and 12-1612 is to provide notice and to limit the amount of record searching interested parties must do to ascertain whether the judgment remains valid. *J.C. Penney*, 197 Ariz. at 119, ¶ 29, 3 P.3d at 1039. Once a bankruptcy stay is imposed, however, that purpose has been frustrated because § 108(c) extends the

- 9 -

effectiveness of the judgment beyond the five-year statutory period.[5] Creditors and other interested parties cannot know the number of days that a stay remains in effect without searching bankruptcy records outside the usually applicable ninety-day window. Under these circumstances, little additional burden is imposed by requiring an interested party to conduct a full search of state records to determine whether a renewal affidavit had been filed.

¶18 The debtor is not harmed by this frustration of purpose because the debtor himself filed the bankruptcy action and invoked the stay. The debtor already has notice of the status of the judgment. *Cf. Nowels v. Bergstedt*, 120 Ariz. 112, 114, 584 P.2d 576, 578 (App. 1978) (noting that debtor has no vested right in prior interpretation of A.R.S. §§ 12-1551 and 12-1612).

¶19 Because the rationale supporting the limited filing window has been frustrated in these circumstances, we hold that Arizona law would treat an affidavit of renewal filed anytime between December 6, 1996, the date ninety days preceding the Lachters' original second renewal deadline under A.R.S. § 12-1612(E), and the extended deadline of July 6, 1998, as having been timely filed.

---

[5] The other purpose, renewing the judgment, remains unaffected.

¶20      We reach our conclusion as follows:  The BAP concluded in *Smith II* that § 108(c) applies to determine the renewal period for a state-court judgment.  293 B.R. at 223.  That period is extended by either subsection (c)(2) to a date thirty days after notice of the termination of the automatic stay, or by subsection (c)(1) to a date set by "applicable nonbankruptcy law," including "any suspension of such period." *Id*.  If either of those sections expands the deadline for filing a renewal affidavit past the five-year period set forth in state statute, we will treat an affidavit filed at any time from ninety days before the expiration of the five-year period through the expiration of the extended deadline as timely.  Honoring affidavits filed after the fifth year but before the end of the extended period serves the remedial purposes of A.R.S. §§ 12-1551 and 12-1612.  *See Nowels*, 120 Ariz. at 114, 584 P.2d at 578.

## CONCLUSION

¶21      For the foregoing reasons, we answer the first certified question in the negative, and the second certified question in the affirmative.

_____
Rebecca White Berch, Justice

CONCURRING:

- 11 -

_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice